UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    Lee E. Chapman,                                  Case No. 19-26731-beh

              Debtor.                         Chapter 13

**DECISION AND ORDER REGARDING
NICOLET NATIONAL BANK'S MOTION FOR SANCTIONS**

      In the consumer bankruptcy realm, an "emergency filing" often refers to the filing of a petition for relief, without schedules, in order to forestall some imminent state court or creditor action. The degree of gravity can be assessed by acquiring additional, sometimes mitigating information. Lawyers are bound by multiple duties—duties to clients and the courts. Lawyers have access to information, in varying degrees. This motion for sanction concerns an interplay of those duties and access.

      Nicolet National Bank filed a motion to impose sanctions against the debtor and her counsel under 11 U.S.C. § 105(a) and Federal Rule of Bankruptcy Procedure 9011, contending that Mrs. Chapman's bankruptcy petition was filed in bad faith for the improper purpose of hindering and delaying her creditors and lacked any rehabilitative purpose. At an evidentiary hearing, the Bank withdrew its request for sanctions as to Mrs. Chapman but maintained its request for sanctions against her counsel due to his failure to investigate the facts prior to filing the debtor's Chapter 13 case. For the reasons stated below, the Court now grants the Bank's motion for sanctions.

## JURISDICTION

      This Court has jurisdiction under 28 U.S.C. § 1334. A motion for sanctions under Bankruptcy Rule 9011 is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (O). *See Baermann v. Ryan (In re Ryan)*, 411 B.R. 609, 613 (Bankr. N.D. Ill. 2009).

## BACKGROUND

Sometime on or around July 10, 2019, Ms. Holly Olm contacted the law office of Attorney David Clowers and left messages for the office, seeking to file a Chapter 13 bankruptcy case. Ms. Olm mainly interacted with Attorney Clowers' paralegal, Ms. Colleen Michiels. Ms. Michiels scheduled an appointment with Ms. Olm for July 10. When Ms. Olm arrived at the law office that day, she disclosed that the bankruptcy case was not for her, but rather intended for her mother, Mrs. Lee Chapman. Ms. Olm showed Ms. Michiels a copy of a power of attorney to act in her mother's stead. According to Ms. Michiels, Ms. Olm stated that a confirmation of sale hearing was scheduled for the next day regarding her mother's home. Accordingly, Attorney Clowers and his paralegal treated the matter as an "emergency" filing, in an effort to preserve Mrs. Chapman's home from the sheriff's sale. Ms. Michiels testified that the filing was completed that same day, and the receipt shows it was filed at 1:46 PM CDT. ECF Doc. No. 1.

According to testimony from Ms. Michiels, Ms. Olm disclosed that Mrs. Chapman had filed one previous bankruptcy case. Yet, Question 9 of the petition, "Have you filed for bankruptcy within the last 8 years?" is answered "No." ECF Doc. No. 1, at 3. Ms. Michiels said Ms. Olm represented that her brother was going to help make payments in this case. Neither Attorney Clowers nor Ms. Michiels spoke with Mrs. Chapman herself prior to filing the Chapter 13 bankruptcy case on her behalf, nor did they have any contact information for Mrs. Chapman. Neither Attorney Clowers nor Ms. Michiels spoke with the brother, Mr. Brad Olm, prior to filing the bankruptcy case, nor did they have any contact information for Mr. Olm. Neither Attorney Clowers nor Ms. Michiels checked the online bankruptcy case records to determine who had filed the previous case for Mrs. Chapman, why it had failed, or anything having to do with the status of her home and the mortgage lender. Neither Attorney Clowers nor Ms. Michiels called the lawyer who had filed Mrs. Chapman's prior bankruptcy case to learn its circumstances. They proceeded to file the minimum documents necessary to begin a bankruptcy case, without

a Chapter 13 plan or schedules. ECF Doc. No. 1. They also filed an application on behalf of Mrs. Chapman, asking that she be able to pay the $335 filing fee in installments, *i.e.*, one month later, a request which the Court later denied. ECF Doc. Nos. 3, 21.

Attorney Clowers and Ms. Michiels modified the law office's representation agreement to explain that Ms. Olm's $600 initial retainer was solely for the emergency filing and continued representation would be dependent on Ms. Olm providing the additional information that would be necessary to finish the filing and completion of a Chapter 13 plan on her mother's behalf. *See* ECF Doc. No. 40.

Normally, the filing of a petition for bankruptcy relief triggers an automatic stay, pursuant to 11 U.S.C. § 362(a), such that creditors, including the mortgage lender, must cease all collection activity against debtors like Mrs. Chapman. Under that circumstance, Attorney Clowers and Ms. Michiels testified that it is his law office's routine practice to send a form letter to the court and attorneys in all pending state court matters advising them of the filing of the bankruptcy case. The Clowers firm sent such a letter in Mrs. Chapman's pending state court case. ECF Doc. No. 40.

Here, however, Ms. Olm did not disclose to Attorney Clowers and Ms. Michiels, nor did they discover themselves, that two previous cases had been filed on behalf of Mrs. Chapman in the preceding twelve months. *See* Case Nos. 18-30442-beh, 19-22820-beh. Under 11 U.S.C. § 362(c)(4)(A)(i), this meant that a stay was *not* automatically in place when the third case was filed. Instead, the debtor would have to file a motion to impose the stay and "demonstrate that the filing of the later case is in good faith as to the creditors to be stayed." 11 U.S.C. § 362(c)(4)(B).

On July 11, 2019 the Bankruptcy Court Clerk made an administrative entry on the public docket of the third case noting the debtor's prior two filings, including case numbers, dates of filing and dates of dismissal for failure to make plan payments. ECF Doc. No. 5. Once the mortgage lender, Nicolet National Bank, received notice of this third filing of the bankruptcy petition,

counsel for the Bank filed a motion seeking an order of the Bankruptcy Court confirming that no stay was in effect, pursuant to section 362(c)(4)(A)(ii). ECF Doc. No. 6. Attorney Clowers filed an objection the next day. ECF Doc. No. 8. Attorney Clowers also filed a motion to continue the automatic stay (apparently misunderstanding the effect of the dismissal of the debtors' two prior cases). ECF Doc. No. 11. At some point over the next few days, counsel for the Bank contacted Attorney Clowers, and the lawyers together discussed the implications of the third filing on any stay. As a result, Attorney Clowers withdrew his objection to the Bank's motion and withdrew his motion to continue the automatic stay. ECF Doc. Nos. 12, 13, 15. The Bank filed a proposed order, confirming the absence of a stay, which this Court signed. ECF Doc. Nos. 16, 23.

On July 19, Attorney Clowers filed a motion to impose the stay, ECF Doc. No. 17, to which the Chapter 13 trustee and the Bank both objected. ECF Doc. Nos. 19, 22. A week later, Attorney Clowers withdrew the motion to impose the stay. ECF Doc. No. 25. On July 23, the Bank filed a motion for sanctions against the debtor and the debtor's counsel, asserting misconduct under Federal Rule of Bankruptcy Procedure 9011. ECF Doc. No. 20. The Court dismissed Mrs. Chapman's bankruptcy case for failure to pay the filing fee on August 15, 2019. ECF Doc. No. 31.

Nicolet's motion for sanctions against the debtor and her counsel remained pending, and the Court held a preliminary telephone hearing on September 3, 2019 and an evidentiary hearing on September 20. After the conclusion of evidence, Nicolet withdrew its motion for sanctions against Mrs. Chapman, but maintained its position against Attorney Clowers. The Court took testimony of Attorney Clowers, Ms. Michiels, Mrs. Chapman, and her son Mr. Brad Olm. Ms. Holly Olm did not appear to testify, as subpoena service was not accomplished. The parties submitted briefing thereafter and the Court took the matter under advisement.

## Summary of Testimony

Mrs. Chapman testified that she had no knowledge of the Bank's foreclosure action, the sheriff's sale, or her own bankruptcy cases until social workers appeared at her home on July 23, 2019. On that day, she learned that her house payments were not being made, her house insurance had defaulted, her property taxes had not been paid, and that the Bank had initiated foreclosure multiple times, which resulted in multiple bankruptcies being filed on her behalf. Mrs. Chapman attributes all of the foregoing to the actions of her now-estranged daughter, Ms. Holly Olm. Mrs. Chapmen explained that after her second husband died in the summer of 2013, she and her daughter decided to "pool" their resources and stay in the family home. Mrs. Chapman gave Ms. Olm a power of attorney and allowed her daughter to take over managing her finances from that point. She testified that she never had any reason to question her daughter, did not check her bank account balances, did not collect the mail at the home, and relied on her daughter fully to manage the family finances and home. Mrs. Chapman had never heard of or spoken to Attorney Clowers—nor her purported counsel for the two prior bankruptcy cases—until July 23, 2019.

Mr. Brad Olm testified that his mother called him on July 24, 2019, asking for help. Over the next 48 hours, he investigated Mrs. Chapman's finances and learned of the financial havoc that his sister had caused. Mr. Olm testified that his sister had never contacted him about contributing to his mother's mortgage payments, and he had not been aware of any missed payments, foreclosure actions, or bankruptcies for his mother.

Attorney Clowers presented statements to the Court on his own behalf. He explained that he has a background in legal aid services and has been performing those duties for over 18 years, through which he has filed numerous bankruptcy petitions. He asserted that he and his law office relied upon the statements made by Ms. Olm, and due to the emergency status, they did not have the opportunity to make an extensive investigation into the circumstances regarding Mrs. Chapman's filing. Attorney Clowers moved

forward with the intent to protect the homestead for Mrs. Chapman through the vehicle of a Chapter 13 petition and plan. He asserted that he did not act in bad faith, and further explained that his law office will no longer file emergency petitions so that they can investigate all aspects of a debtor's situation.

## DISCUSSION

**A.    Violations of Bankruptcy Rule 9011**

Nicolet National Bank moved for sanctions under Federal Rule of Bankruptcy Procedure 9011. That Rule is modeled after Federal Rule of Civil Procedure 11 and is "essentially identical" to it. *In re Ryan*, 411 B.R. at 613 ("courts look frequently to cases that interpret Rule 11 when construing Bankruptcy Rule 9011"). Like Rule 11, Bankruptcy Rule 9011 includes a 21-day "safe harbor" provision, the purpose of which is to "give[] the offending party a 'safe harbor' within which to withdraw or correct the offending pleading" and avoid the imposition of sanctions. *Matrix IV, Inc. v. Am. Nat'l Bank & Tr. Co. of Chicago*, 649 F.3d 539, 552 (7th Cir. 2011). *See* Fed. R. Bankr. P. 9011(c)(1)(A); Fed. R. Civ. P. 11(c)(2). But the safe harbor provision does not apply if the challenged paper is a bankruptcy petition, because "[t]he filing of a petition [often] has immediate serious consequences . . . ." Fed. R. Bankr. P. 9011 advisory committee's note to 1997 amendment.

Rules 11 and 9011 have both a subjective and objective component. *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs., Inc.*, 9 F.3d 1263, 1269 (7th Cir. 1993); *Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928, 931 (7th Cir. 1989). The subjective assessment questions "why the petitioner pursued the litigation." *In re Collins*, 250 B.R. 645, 661 (Bankr. N.D. Ill. 2000); *see* Fed. R. Bankr. P. 9011(b)(1) (imposing a duty on counsel to ensure that a petition, for example, is not filed "for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation"). The objective component asks whether the filing was made "after reasonable investigation into the law and the facts." *Collins*, 250 B.R. at 661 (citing *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1083 (7th Cir. 1987)); *see*

Fed. R. Bankr. P. 9011(b)(3) (imposing a duty on counsel to ensure that the allegations and other factual contentions, in the context of a petition, "have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery").

Here, not only did the Clowers firm file a Chapter 13 petition that the firm expected would have the effect of halting confirmation of a sheriff's sale the following day (the only reason for the "emergency filing"), but its lack of investigation meant it failed to correct an error in the petition (no previous bankruptcy cases) and the firm then filed an objection to the Bank's motion to confirm that no stay was in effect. ECF Doc. No. 8. On July 15, five days after filing the "emergency petition," and still without filing schedules, the Clowers firm filed a motion to continue the automatic stay. ECF Doc. No. 11. Apparently, by this point, Attorney Clowers had learned that there had been not one, but two, prior cases filed on behalf of Mrs. Chapman and dismissed within the prior year, but he incorrectly opted to file a motion to *continue* (rather than impose) the stay. Seemingly recognizing this error, the next day Attorney Clowers withdrew both his objection to the motion to confirm the absence of the stay and his motion to continue the stay. On July 18, counsel for the Bank submitted a proposed order confirming there was no stay in place, which the Court signed.

On July 19, 2019, the Clowers firm then filed a motion to *impose* the automatic stay. ECF Doc. No. 17. The motion to impose the stay, however, alleges no new information than that contained in the withdrawn motion to continue the stay. This belated filing belies the conclusion that Attorney Clowers had fully investigated and understood the history of Mrs. Chapman's bankruptcies, and Ms. Olm's misrepresentations, since filing the "emergency petition" nine days earlier. According to Mrs. Chapman, she had no knowledge of Attorney Clowers or any of her three bankruptcy cases until July 23. On July 22, 2019, the Court notified the debtor's counsel via docket entry that the motion was "deficient in two respects. It does not include a hearing date, which the Court previously advised is required per LR 9013.2(a) and it does not

include an affidavit of the debtor, presumably the person who has personal knowledge as to whether this case was filed in good faith sufficient to overcome the statutory presumption." ECF Docket Entry dated 07/22/19. The Chapter 13 trustee filed an objection to the motion based on the absence of schedules and lack of changed circumstances since the dismissal of the debtor's last case, and on July 23, the Bank filed its motion for sanctions. On July 26, the Clowers firm withdrew the motion to impose the stay, in part because the firm was unable to obtain an affidavit of the debtor to support the motion. ECF Doc. No. 25.

In sum, the Clowers firm took Ms. Olm, the power of attorney, at her word, and because of self-imposed time limits, avoided the easy step of checking PACER records of Mrs. Chapman's previous bankruptcy, where Attorney Clowers or his paralegal would have learned that the debtor had not one, but two prior cases. They would have known that a stay was not automatic. The rush to file is reflected in the fact that the petition erroneously states "no previous cases."

The Court recognizes this happens less often in routine cases, but by checking PACER and seeing there were two prior cases, the Clowers firm also could have made one phone call to the debtor's prior counsel, Attorney Larry Vesely, and would have learned that Ms. Holly Olm had spun the same sham story about a brother whom she claimed would save the day by paying the mortgage arrears, but never actually did so.

An "extensive investigation," as suggested by Attorney Clowers, was not required. Only reasonable investigation must be made. But the firm's quick, uninvestigated filing resulted in costs to the Bank that it wouldn't have incurred otherwise. Also, as discussed above, at least the filing of the motion to impose the stay reflects a lack of investigation even with additional time afforded the Clowers firm. Such a motion should be filed only when there is adequate support grounding it. *Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir. 1986).

**B.      Appropriate Measure of Sanctions**

The only remaining question is the appropriate sanction. A sanction for a violation of Rule 9011 must "be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated," and may include "some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation," if "warranted for effective deterrence." Fed. R. Bankr. P. 9011(c)(2). A court enjoys broad discretion in determining the appropriate sanction to impose for a Rule 9011 violation. *See Divane v. Krull Elec. Co.*, 319 F.3d 307, 314 (7th Cir. 2003); *Fries v. Helsper*, 146 F.3d 452, 459 (7th Cir. 1998) (noting that courts have "significant discretion in determining what sanctions, if any, should be imposed for a violation, subject to the principle that the sanctions should not be more severe than reasonable necessary to deter repetition of the conduct by the offending person(s)"); *Frantz v. U.S. Powerlifting Fed'n*, 836 F.2d 1063, 1066 (7th Cir. 1987) (When determining an appropriate sanction under Rule 11, "[t]he court may impose a penalty as light as a censure and as heavy as is justified.").

Because Rule 9011 is not a fee-shifting statute and the primary purpose of sanctions is the deterrence of baseless filings, prevailing parties "are not automatically entitled to receive full reimbursement of their expenses just because the case was frivolous. A Rule 11 sanction is not meant to reimburse opposing parties for their costs of defense." *Anderson v. County of Montgomery*, 111 F.3d 494, 502 (7th Cir. 1997), *overruled on other grounds by DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *see also Johnson v. A.W. Chesterton Co.*, 18 F.3d 1362, 1366 (7th Cir. 1994) ("[T]he Rule calls only for 'an appropriate sanction'—attorney's fees are not mandated. While an award of the injured party's attorney's fees may well be the norm, and satisfies the compensatory purpose of Rule 11 to ensure 'that the proponent of a position incurs the costs of investigating the facts and the law, it is also true that the deterrent purpose of the rule should be served by impos[ing] a sanction that fits the inappropriate conduct.'" (internal citations omitted)).

In fashioning an appropriate sanction, a court "should reflect upon equitable considerations." *Brown v. Fed'n of State Med. Boards of the U.S.*, 830 F.2d 1429, 1439 (7th Cir. 1987), *abrogated in part on other grounds by Mars Steel Corp.*, 880 F.2d at 930. "These include (but are not limited to) whether the misconduct was part of a pattern, whether the attorney has engaged in similar conduct in other litigation, what effect the misconduct had on the litigation process, whether the attorney is experienced in the area of law, and whether the conduct was willful or negligent." *In re Brent*, 458 B.R. 444, 462 (Bankr. N.D. Ill. 2011); *See also In re Witt*, 481 B.R. 468, 478–79 (Bankr. N.D. Ind. 2012) ("In fashioning an appropriate sanction, the court may consider such things as the nature of the misconduct, whether it was intentional or inadvertent, the degree of culpability, if it represents a pattern of activity in this or other litigation, its effect on the litigation, and, if appropriate, the resources of the individual or party being sanctioned.").

While Nicolet National Bank seeks $4,004.80 in attorney fees and costs as the appropriate sanction, Attorney Clowers urges against the imposition of any sanction (alternatively, Attorney Clowers suggest that if sanctions are imposed, that Ms. Olm be held liable). The Court will take somewhat of a middle road and award a portion of Nicolet's reasonable attorney fees and costs as the appropriate sanction against Attorney Clowers. Rule 11 requires the least severe sanction adequate to serve as an effective deterrent. *Vollmer v. Publishers Clearing House*, 248 F.3d 698, 710–11 (7th Cir. 2001). Courts may use their discretion to award, for example, a percentage of the prevailing party's fees as a sanction. *See, e.g., Johnson*, 18 F.3d at 1367 (recognizing that court had discretion to award 20% of fees, but remanding for further consideration, based on factors in addition to relative law firm size). Where courts award a smaller portion of the fees requested as a sanction, compensation to the prevailing party is not the primary force behind such sanction; instead, deterrence is the main purpose. *Brown*, 830 F.2d at 1439.

First, despite Attorney Clowers' argument and history of services to the indigent and low-income, a non-monetary sanction would be insufficient to

redress the harm caused or to deter him and others from filing without adequate investigation in the future. *See, e.g.*, *Chwarzynski v. Tebens*, No. 07 C 2102, 2008 WL 4210661, at *1 (N.D. Ill. Sept. 10, 2008) (declining to impose only a non-monetary sanction but finding payment of all opposing parties' fees and expenses would be excessive). Clearly, there was harm to Nicolet, because the confirmation of sheriff's sale did not go forward when scheduled, even though Mrs. Chapman, in fact, had no funds to repay the arrearage during a Chapter 13 plan. Nonetheless, other factors that the Court has considered are the fact that this failure to investigate by the Clowers firm appears to be a discrete instance and is not part of a pattern of unwarranted filings. Counsel has several decades of experience. The fact that counsel filed without adequate investigation, relying on a fairly sympathetic, albeit untrue, story by the debtor's disingenuous and manipulative daughter, suggests a negligent sense of urgency, not willful misconduct. *See Brent*, 458 B.R. at 462 (the court should reflect upon equitable considerations, including whether misconduct was part of a pattern, counsel's level of experience, and whether the conduct was willful or negligent).

      Attorney Clowers asks the Court to consider his history of Legal Aid representation and other pro bono work, as well as the fact that his office is comprised of only Attorney Clowers and Ms. Michiels, a paralegal. This is a magnitude-of-sanction argument, which other courts recognize. *See, e.g.*, *Johnson*, 18 F.3d at 1366 ("One can easily envisage a situation in which a sanction of $50,000 would devastate a sole practitioner but would be only petty cash of minimal deterrent effect with respect to a giant law firm."). On the other hand, the fact that Ms. Michiels had shortened work hours the day Ms. Olm came to the office is not a justification to short-circuit a reasonable duty to investigate the facts. Attorney Clowers and Ms. Michiels knew there were some facts out there—Ms. Olm told them at least that Mrs. Chapman had one prior bankruptcy. But they failed to investigate even that on PACER, or note it on the petition.

Considering all the factors, the Court finds that a monetary sanction is warranted, but one less than the full payment of Nicolet's reasonable attorney fees and costs. One-third of the fees and costs incurred for the instant, third case seems appropriate.

The Bank generally described its fees and costs for all three Chapter 13 proceedings in its response, ECF Doc. No. 42. In that response, the Bank describes fees and costs of $1,151 for the first case, fees of $2,0523.80 for the second case, plus unknown travel time, and fees of $800, plus the instant motion fees and costs, in this third case, as well as the suggestion of disgorgement of Attorney Clowers' $600.00 fee paid by Ms. Olm. Courts require a more precise accounting of a lawyer's reasonable fees incurred before making an award. *See Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011) (applying the lodestar method, multiplying the hours reasonably spent on the litigation by a reasonable hourly rate). The Bank will have 14 days to submit an affidavit documenting the fees and costs relating **solely to the third case**—the only case involving Attorney Clowers' investigation and legal judgment. Attorney Clowers then will have 7 days to submit any objection to the reasonableness of those fees, and the Court, by making its own reasonableness determination, will issue an order identifying the dollar amount of the sanction.

## CONCLUSION AND ORDER

For the reasons set forth above, the Court concludes that Attorney Clowers did not sufficiently investigate the facts before filing Mrs. Chapman's third bankruptcy case on July 10, 2019, causing unnecessary expense to Nicolet National Bank. Sanctions in the amount of one-third of the Bank's reasonable attorney fees, in an amount to be determined more precisely in the coming weeks, will be imposed.

IT IS THEREFORE ORDERED that Nicolet National Bank must submit an affidavit documenting the fees and costs relating solely to this bankruptcy case, **within 14 days of the date of this order**.

IT IS FURTHER ORDERED that Attorney Clowers must submit any objection to the reasonableness of those fees, **within 7 days of the submission of the bank's affidavit.**

Dated: March 11, 2020

By the Court:

Beth E. Hanan
United States Bankruptcy Judge